Lee, J.
I think the first instruction given to the jury on the motion of the demandants’ counsel, will not bear the construction placed upon it by the counsel for the plaintiff in error in this court. He supposes that it confined the tenant to proof of adversary possession under the grant obtained upon his inclusive survey, and deprived him of the right of going behind that patent, and for the purpose of making out his defence under the statute of limitations, of showing possession under -color of title anterior to its emanation. That he had the right to do so will not be denied. For this purpose he was authorized to give in -evidence the entries for the different tracts embraced in the inclusive survey; the order of court authorizing the survey, and the survey made in pursuance of the order; though as there can be no adversary possession *425 against the commonwealth, he could not go behind the senior grant. Shanks v. Lancaster, 5 Gratt. 110. But there is nothing in the terms or in the effect this instruction, to prevent him from availing himself of all this evidence, if he had chosen so to do. All that it purports to do is to declare the effect of the junior patent obtained upon the inclusive survey, as the foundation for the defence of adversary possession under the statute of limitations; and it informed the jury that its effect was just the same as that of any other patent, and that it only operated as any other patent would, (if the demandant had shown title under an older grant in himself,) to give the tenant a color of title under which he might, if he could, show an adversary possession sufficient to bar the action under the statute of limitations. That this is strictly correct cannot be doubted. A grant obtained upon an inclusive survey under the statute, possesses no peculiar or distinctive virtue to support a defense under the statute of limitations, not pertaining to any other grant. For this purpose any grant would equally serve by affording the necessary show or color of title to which the adversary possession might be referred. Nor is there the slightest ground for supposing that the tenant was restricted in making out his case, to this particular patent. He was at perfect liberty after showing it, to go on and show any other instruments under which he claimed title, whether the claim was a good or a bad title, a legal or an equitable title, (Shanks v. Lancaster, ubi supra,) and make out his possession if he could, under any one or all combined.
But in truth the tenant could not have been prejudiced if he had been restricted to his inclusive patent as the basis of the claim of title under which he held possession, because that patent issued in 1797, and it was not necessary, in order to complete the bar under the statute, to carry back the adversary possession *426 further than the year 1799. So that if he could make out the necessary thirty years’ adversary possession next before the emanation of the writ, it would have fallen under the date of this patent, and this would have furnished the needful color of title and made out the defense as effectually as if any number of different claims of title had been exhibited.
The instruction to the jury that the possession which would avail the tenant under the statute of limitations must be an actual and continued adversary possession of the land in controversy, or some part thereof, is, I think, strictly correct, nor do I perceive how there can be any objection to it. If the tenant had not had such possession, he could not maintain this defense. The actual adversary possession of the premises in controversy is the very essence of a defense under the statute of limitations. Its effect is to render such possession conclusive in behalf of either demandant or tenant, without reference to the original merits of the controversy, and even against the plainest and most convincing proof of better original title. To say that a party sued for land in his possession is defending himself under the statute of limitations, is exactly equivalent to saying that he is seeking to defeat the action by proving actual adversary possession of the subject in controversy in himself and those under whom he claims, for the period necessary to complete the bar. How he is to make out this possession, whether by proof of actual settlement and occupancy, or of such open, notorious and habitual acts of ownership importing the use and enjoyment of the property, and equivalent to actual occupancy, or by proof of such actual occupation and enjoyment of another portion of the tract claimed by him, of which the disputed premises is also parcel, is a totally different question. This involves other and distinct principles, and especially the enquiry in what sense the rule that *427 possession, of part is possession of the whole, is to be understood, and of what modifications it is susceptible in its application. To this precise question, as I understand the bill of exceptions, it would seem that the attention of the court was not specifically directed. But if it be susceptible of a different construction, and if we are to understand the instruction as implying that the occupancy and enjoyment by the tenant of a portion of his land other than the parcel in controversy, with whatever claim, could not constitute such a disseizin of the demandant as would enable him to maintain his defense under the statute of limitations, I should still think it strictly correct. The case is one of two patents conflicting in part, occasioning what is called a “ lap” or “ interlock.” The elder patentee under his grant acquires at once constructive seizin in deed of all the land embraced within its boundaries, although he has taken no actual possession of any part thereof. Clay v. White, 1 Munf. 162; Green v. Liter, 8 Cranch’s R. 229. The junior patentee under his grant acquires similar constructive seizin in deed of all the land embraced by his boundaries, except that portion within the interlock, the seizin of which had already vested in the senior patentee. Clark's lessee v. Courtney, 5 Peters’ R. 318, 354; Langdon v. Potter, 3 Mass. R. 215.
In this state of the case, if the junior patentee settle upon that portion of the land within the interlock, claiming the whole within his boundary, he thereby ousts the senior patentee of his constructive seizin, and becomes actually possessed to the extent of his grant. Calk v. Lynn's heirs, 1 A. K. Marsh. R. 346; West v. Price's heirs, 2 J. J. Marsh. R. 380; Fox v. Hinton, 4 Bibb’s R. 559. Here possession of part is possession of the whole. But if his settlement be outside of the interlock, there the possession of part is to be construed in reference to the conflict of boundaries, *428 and with whatever claim it he taken, it gives him possession of that part of the land, only, lying without the interlock. Of that within, he does not thereby acquire the possession. The constructive possession which he would have gained if there had been no conflict, does not take effect.; and there is nothing which can serve to overcome the constructive seizin in deed of the elder patentee, and work an ouster. To effect this, there must be am actual invasion of the boundary of the senior patentee, by some act or acts palpable to the senses, and which would serve to admonish him that his seizin was molested. He is of course presumed to know his own boundary, and if that be invaded by plain, open, visible acts of possession on the part of the other, and he submits or fails to assert his right, an ouster will be accomplished, and he shall be said to be disseized. But if the acts be not of the character above indicated, if they amount to a mere adverse claim, however connected with possession of another part of the land, they will not have that effect. The consequence of a different rule, as justly remarked by Judge Baldwin in Taylor v. Burnsides, 1 Gratt. 165, 196, would be that a man might be disseized of his ■freehold. not only without his knowledge but even without the possibility of his knowing it. See also Buford v. Cox, 5 J. J. Marsh. R. 589.
There is nothing in any of the cases cited by the counsel for the plaintiff, in conflict with the opinion above expressed. In the cases of Green v. Liter, 8 Cranch’s R. 229; Clarke v. Courtney, 5 Peters’ R. 319; Bradstreet v. Huntington, Ibid. 402; Taylor v. Burnsides, 1 Gratt. 165; and Overton v. Davisson, Ibid. 211, the possession relied on was within the limits of the opposing claim, and so the question did not and could not arise. In the case of Taylor v. Burnsides, however, Judge Baldwin, in the able and luminous opinion delivered by him, adverts to this question, and expresses *429 views with, which the opinion here advanced will be found to be strictly coincident: and it would seeui to be fully supported by numerous cases. Burns v. Swift, 2 Serg. & Rawle 436; Napier’s lessee v. Simpson, 1 Overton’s Tenn. R. 443; Voorhies v. Bridgford, 3 A. K. Marsh. R. 27; Trimble v. Smith, 4 Bibb’s R. 257; Smith v. Mitchel, 1 A. K. Marsh. R. 208; Pogue v. McKee, 3 A. K. Marsh. R. 128; Bodley v. Logan’s heirs, 2 J. J. Marsh. R. 254; Fox v. Hinton, 4 Bibb’s R. 559.
It is objected to the third instruction, first, that it is abstract in its character; secondly, that it is not law. That an instruction presents merely an abstract proposition, is certainly a very sufficient reason why a court may refuse to give it: but if given and it state the law correctly, I am not aware that it has ever been held a sufficient cause for reversing the judgment. And though erroneous, it would, as it seems, not be deemed sufficient to reverse. Hunter v. Jones, 6 Rand. 541. But the instruction was not of this character; for there was evidence in the case which might involve the question as to the nature of the acts which would amount to an adversary possession. And whatever doubts may formerly have been entertained as to the correctness of the doctrine which it asserts, it must now be regarded as settled in Virginia by the cases of Taylor v. Burnsides, 1 Gratt. 165, and Overton v. Davisson, Ibid. 211. The authority of these cases upon the points decided by the court, has been, I believe, universally acquiesced in by the profession, and I deem it unnecessary to do more than simply to refer to them : They will be found fully to cover the instruction in all its breadth; and indeed the language in which it is expressed would seem to have been adopted from the judgment of the court in Overton v. Davisson. If it be said that “ the acts of ownership” effecting a change in their condition which shall constitute an adversary possession of lands uncleared and *430 in a state of nature, and the character and extent of this change are not defined or explained, the answer is that the court has conformed to the ruling of this court in the case before referred to, and was not asked to give such definition or explanation. This will perhaps constitute the subject of consideration upon some future occasion. In this case I do not deem it necessary or proper to do more than simply to allude to it.
I think the motion for a new trial was properly overruled. The contest in the case turned upon the statute of limitations; and to make out the defense it was necessary for the tenant to carry back the possession of those under whom he claimed to July 1779. There was no proof of possession of any part of the lands covered by the inclusive patent prior to the year 1800 ; nor was there proof of any actual possession or entry upon the disputed portion prior to the year 1812. In the view I have taken of the case, there was no disseizin of the demandants’ ancestor prior to the year last named. But if even the possession of part of the land without the interlock could be regarded as importing adversary possession of the portion within, and thus working a disseizin, still the evidence fails to carry it back far enough to complete the bar. From the possession in 1800 no inference can legitimately be drawn that the same party had had possession for the previous year. Nor do the circumstances referred to, the making the inclusive survey, obtaining the patent thereon, probable notice of those proceedings to the demandants’ ancestor, &c., &c., constitute any proof of such possession as is necessary to work a disseizin. They tend to make out rather a case of adverse claim than one of adversary possession; and they fall within the influence of the rules in Taylor v. Burnsides and Overton v. Davisson. Nor do they raise, in connection with the possession in 1800, any necessary presumption of previous posses *431 sion, because they are all entirely consistent with the hypothesis that the possession had its commencement in the year first spoken of by the witness.
As to the supposed misunderstanding of the instructions by some of the jury: I will remark that while affidavits of jurors will generally be received in support of their verdict, they will not readily be received to invalidate it. The cases in the books upon this subject are numerous ; and it is true, in the multitude of decisions there will appear to be some contrariety; and quite a number of cases are to be found in which such affidavits have been received for the purpose of impeaching verdicts, and new trials have been sometimes granted. But the leaning of the courts of most approved authority is against the practice of grounding such motions upon them; and a disposition has been manifested greatly to restrict the class of cases in which, upon such affidavits, new trials will be allowed. In the case of Harnsberger v. Kinney, 6 Gratt. 287, Judge Allen, delivering the opinion of the court, states strongly the reasons founded on principles of public policy for discouraging a resort to evidence of this character. It was a case in which a new trial was asked for on the ground that the instruction of the court had been misunderstood by some of the jury. The Circuit court had set aside the verdict and granted the new trial; and this court reversed the judgment of the Circuit court, and proceeded to render judgment on the verdict. I should therefore feel very reluctant to entertain a motion for a new trial, upon the ground that some of the jurors, as disclosed by their own affidavits, had misunderstood the instructions of the court in a case in which the court before which the trial was had, had refused to set aside the verdict as contrary to evidence, and in which, so far as this court could see, full justice had been done.
But in truth, were it not for the statement in the *432 bill of exceptions, that tbe judge himself, if he had. been a juror, would have carried the possession back to the date of the inclusive survey, and have found for the tenant, I should have thought there was no ground whatever for imputing any such mistake or misunderstanding of the instruction as is supposed. From the terms in which it is expressed, the Circuit court was of opinion the tenant must show actual possession of part at least of the land within the interlock, as contradistinguished from such possession as he would have acquired if there had been no conflict of boundaries, by taking such possession of part of the land without, and that it must have been held adversely for thirty years prior to the institution of the suit. The proof is clear that he had no actual possession by occupancy or enjoyment of any part within the interlock prior to the year 1812;; and there could be no doubt, therefore, if such a possession was required to be proved, that he had failed to make out a bar under the statute. Such an interpretation might very well, I think, be given to the instructions, and they are complained of here because such was their meaning; and I feel some little difficulty in reconciling it with the statement above referred to. But however this be, the instructions, as understood by the three jurors referred to, in my view propounded the law in substance correctly ; and I think there is not the slightest ground for disturbing the verdict because of any supposed mistake or misapprehension as- to what was really the law of the subject.
There remains to be considered but one other question, and that is as to the effect of the imperfect description of the land in the count, and the variance between it and the verdict as to quantity and boundaries. And on my first examination, I felt some difficulty on this point. Further reflection, however, has served to remove -it. The form of the count in a writ *433 of right under the act of 1819, as prescribed in the act, requires the boundaries of the land to be stated.. The count filed attempts to set them out, but those given do not make a diagram that will close, an open line or lines being left between the end of the course S. 80 W. 52 poles, and the beginning corner. But no objection was made for this defect, by demurrer or otherwise; the usual plea was filed and the issue joined on the mere right; and the jury have found a verdict precisely describing the tenement demanded by its exact quantity and specific boundaries. By this means the defect is cured. Turberville v. Long, 3 Hen. and Munf. 309; Lovell v. Arnold, 2 Munf. 167; Bolling v. Mayor of Petersburg, 3 Rand. 563. It is true the verdict describes the land as bounded by seven lines while in the count the number of lines is eight, and no one of the lines named in the former coincides with any one of those given in the latter; and the quantity of land found by the jury is twenty-three acres, one rood and twenty-six poles, while that demanded in the count is twenty acres. But these things are only matters of description; and the jury having found the tenement described by them in their verdict, to be the same tenement mentioned in the count, we have to suppose that the description given in the count is a mistaken one; and that the demandants have recovered the precise tenement demanded in the count, though by a different and corrected description.
Upon the whole case, I am of opinion to affirm the judgment.
The other judges concurred in the opinion of XiEE, J.
Judgment affirmed..